## BAKER v. STATE INDUSTRIAL COMMISSION et al.

No. 20034. Opinion Filed Sept. 17, 1929.

Clay Snodgrass, for petitioner.

Edwin Dabney, Atty. Gen., Ralph G. Thompson, Asst. Atty. Gen., and Clayton B. Pierce, for respondents.

REID, C. The only question presented by the record in this case is whether the injury sustained by the claimant, French Baker, arose out of his employment within the meaning of the Workman's Compensation Law of this state. The State Industrial Commission denied his claim for compensation, and he brought action in this court to review the finding and judgment of the Commission.

The claimant was an employee of E. G. Fuqua, whose place of business was at Altus, Okla. Fuqua had the district agency covering four counties, for the sale of a refrigerating device called a "Frigidaire." One of the duties of claimant, in his employment, was to install or set in operation a Frigidaire when sale had been made by an agent or employee of Fuqua, in any part of the territory. On the 16th day of June, 1928, at the direction of Fuqua, and using Fuqua's automobile as a conveyance, the claimant went to Snyder, Okla., and installed a Frigidaire. Snyder is about 24 miles east of Altus. When about seven miles on his way, returning to Altus, he was met by a cyclone and sought refuge in a church building. The building was destroyed by the cyclone and claimant thereby received the injury for which he asked compensation. The territory covered by the cyclone began about eight miles east of Altus, and having a width of about three miles north and south, it extended from east to west approximately 15 miles. The effect of the cyclone in the territory over which it traveled was disastrous, the evidence showing that more than eight people lost their lives from it.

The claimant seeks to bring his case within the principles laid down by the Supreme Court of Illinois in the case of Central Illinois Public Service Co. v. Industrial Commission et al., 291 Ill. 256, 126 N. E. 144, 13 A. L. R. 967, wherein a tornado was shown to have blown down the building in which the employee was working. We recognize that the doctrine there announced is the law, and it will be applied when called for by the facts. But the facts in the present case lack an essential element existing in that case. However, in order that it may be understood that we agree that compensation should be allowed under the circumstances there found, and in view of the further fact that the principles of law upon which the liability rests under the Workmen's Compensation Law are there discussed with such clearness, we quote from the opinion as follows:

"The determination of the question whether an injury arises out of the employment is one which is frequently attended with much difficulty—not so much in the determination of the rule, as in the application of the rule to the case under consideration. This court has, in a number of cases, quoted with approval the rule laid down in the McNicol Case, 215 Mass. 497. L. R. A. 1916A, 306, 102 N. E. 697, 4 N. C. C. A. 522. In considering the question whether or not the injury arose out of the employment, the Supreme Court of Massachusetts there said: 'It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person famil-

iar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment, but it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected; but, after the event, it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " * * *

"We believe the reasonable rule to be that if deceased, by reason of his employment, was exposed to a risk of being injured by a storm which was greater than the risk to which the public in that vicinity was subject, or if his employment necessarily accentuated the natural hazard from the storm, which increased hazard contributed to the injury, it was an injury arising out of the employment, although unexpected and unusual. An injury, to come within the Compensation Act (Laws, 1913, p. 335) need not be an anticipated one, nor, in general, need it be one peculiar to the particular employment in which one is engaged at the time. While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk, and one to which the public generally is not subjected. Such injury may be then said to arise out of the employment. In the instant case, while the risk of being injured by this cyclone may be said to have been a risk common to the public in the vicinity of such cyclone, regardless of employment, yet, if there was, in the circumstances of Kilgore's employment, an unusual risk or danger of injury from the destruction by storm of the building in which he was employed, such risk may be said to be incident to the employment of the deceased, and the injury received to arise out of such employment. Deceased at the time the storm broke was engaged in assisting and directing the closing up of the plant of defendant in error. These duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes, should the building be destroyed by storm. The evidence shows that the ammonia fumes and scalding steam contributed most largely to the injuries which caused his death. We are therefore of the opinion that there were in the circumstances of the employment of

the deceased risks of being injured by the storm not common to the public in that vicinity, and the circuit court therefore erred in setting aside the award."

And the foregoing doctrine is supported by the following other cases cited by the claimant, viz.: Merrill v. Penasco Lumber Co., 27 N. M. 632, 204 Pac. 72; Aho v. Chicagoff Mining Co., 6 Alaska, 528; Dunnigan v. Clinton Falls Nursery Co. (Minn.) 193 N. W. 466; Reid v. Automatic Electric Washer Co., Inc. (Iowa) 179 N. W. 323; Emmich v. Hanrahan Brink & Ice Co., 201 N. Y. Supp. 637.

And we have clearly recognized the same principles expressed in the foregoing cases in the opinion of this court in the case of Skelly Oil Co. v. Industrial Commission, 91 Okla. 194, 216 Pac. 933, where the court in the syllabus said:

"If the place of the employee's work, by reason of its location and nature, would likely expose him to the danger of sunstroke, or if the risk of injury by sunstroke is naturally connected with and reasonably incidental to his employment, as distinguished from the ordinary risk to which the general public is exposed from climatic conditions, the master will be liable for the consequential injuries."

But there was a necessary element present in the facts shown in each of the foregoing cases which is absent in the case at bar. And this difference is illustrated and well defined by the opinion of the Supreme Court of Nebraska in the case of Gale v. Krug Park Amusement Co., 208 N. W. 739, 46 A. L. R. 1213, wherein the injury to the employee also occurred in the destruction of a building in which he had sought refuge in a storm, and the court held that no recovery could be had under facts similar to those we have here. As the opinion reviews many decisions of other courts, and is so exhaustive of the question, we quote from it at length as follows:

"The only question for us to determine is, Did the injuries which caused the death of Mr. Gale arise out of the employment, within a liberal interpretation of our Compensation Act, remembering that this act provides that the injury, in order to give rise to a cause of action, must be one which not only arises in the course of the employment, but also arises out of the employment? These two propositions must be present in order that recovery may be had. In Pierce v. Boyer-Van Kuran Lumber & Coal Co., 99 Neb. 321, L. R. A. 1916D, 970, 156 N. W. 509, it was held: 'An employee is not entitled to compensation for injury under the Employers' Liability Act unless the accident which caused the injury happened in the

course of his employment, and arose out of his employment.'

"See, also, Feda v. Cudahy Packing Co., 102 Neb. 110, 116 N. W. 190.

"Boyce v. Burleigh, 112 Neb. 509, 199 N. W. 785, is cited by counsel for plaintiff as being contrary to this view. In this he seems to have been misled by his failure to construe the two paragraphs of the syllabus together, as they should be.

. "Ordinarily, an injury, which occurs in the course of the employment will be one which arises out of the same. This, however, is not necessarily true. It might, as in this case, arise in the course of the employment, and yet not out of such employment. Here, the injury arose while deceased was in the line of his duties as such employee, but it would be an unwarranted conclusion to hold that it arose out of the employment. To so find would be to hold that our Compensation Act (Comp. Stat. 1922, secs. 3024-3084) makes the employer an insurer against all injuries received in the course of the employment, when in fact such law limits recovery to injuries received in the course of and out of the employment.

"As is well said in Larke v. Hancock Mut. L. Ins. Co., 90 Conn. 303, L. R. A. 1916E, 584, 97 Atl. 320, 12 N. C. C. A. 308: 'An injury "arising out of" an employment when it occurs in the course of the employment and as a proximate cause of it, that is, when the injury is a natural and necessary incident or consequence of the employment. * * * The phrase points to the origin or source of the injury, and presupposes the existence of a causal connection between it and the employment.'

"Can it be said that a sudden violent storm, such as reflected by the evidence in this case, is one incidental to the employment, or one arising out of it? To so hold would be to reason without a premise. There was no connection, causal or otherwise, between the employment and the cause of the injury, as reflected by the evidence in this case. As said in Urak v. Morris & Co., 107 Neb. 411, 186 N. W. 345: 'There must be somewhere a dividing line, and unless we are to hold that all accidents or injuries which result during the term of employment, or hours of duty, are covered by the act, it would seem that this accident must be excluded.'

"The accident or incident giving rise to the injury must be such as is peculiar to the employment, and must arise within the employment, not without and independent thereof. To conclude otherwise would lead us far afield, and beyond a liberal construction of our Compensation Act. * * *

"In Socha v. Cudahy Packing Co., 105 Neb. 691, 695, 13 A. L. R. 513, 181 N. W. 706,

708, quoting with approval from the opinion in Dennis v. White (1917) A. C. 479, Ann. Cas. 1917E, 325, 15 N. C. C. A. 294—H. L., it is said: 'Where the risk is one shared by all men, whether in or out of employment, in order to show that the accident arose out of the employment, it must be established that special exposure to it is involved.'

"In Larke v. Hancock Mut. L. Ins. Co., supra, it is said: 'If the employment brings with it no greater exposure to injurious results from natural causes, and neither contributes to produce these nor to aggravate their effect, as from lightning, or severe heat or cold, than those to which persons generally in that locality, whether so employed or not, are equally exposed, there is no causal connection between the employment and the injury.'

"It is well said in 28 R. C. L. 804, sec. 93: 'The Compensation Act, it has been very generally held, does not authorize an award in case of injury or death from a peril which is common to all mankind, or to which the public at large is exposed. The argument seems to be that if the workmen were permitted to recover in such cases, he would enjoy privileges above those of the public generally, and in effect be insured against every sort of calamity, which is not the intention of the statute.'

"Thus we conclude that injuries resulting from exposure to the elements, such as abnormal heat, cold, snow, lightning, or storms, are generally classed as risks to which the general public is exposed, and as not coming within the purview of Workmen's Compensation Acts, unless the record discloses a hazard imposed upon the employee by reason of the employment greater than that to which the public generally is subject."

In the case of Carey v. Industrial Commission (Wis.) 194 N. W. 339, the court, in denying recovery, called attention to the facts in the Illinois case we have discussed, which permitted a recovery. And as we think the facts in the case here considered present the same distinction, we quote from the Carey Case as follows:

"In this case the deceased, in common with other men employed in the work, together with persons not employed, but who were in the vicinity, took refuge in the barn, and were in a place of supposed safety, when, by reason of a violent and unprecedented storm, the barn was moved from its foundation, and Carey was killed by the falling debris. Upon these facts the Commission concluded, and we think rightly, that the deceased met his death from a hazard common to the public, and not peculiar to his employment. His employment neither caused nor contributed to his injury, and in that respect the case is clearly distinguishable

upon the facts from Central Ill. Public Service Co. v. Industrial Commission. There an employee was engaged in a service at the time of his death which exposed him in a way not common to the public."

It is not shown by the facts in this case that the petitioner at the time of the injury was in greater peril from the storm than all other persons within the territory of its operation. There was nothing in the character of his employment which caused or contributed to his injury. Therefore, his injury did not arise out of his employment, and is not covered by the Workmen's Compensation Law.

The finding and order of the State Industrial Commission will not be disturbed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.