(No. 30042.—

ARMOUR & COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES H. PLEASANT, Defendant in Error.)

*Opinion filed September 18, 1947.*

FREDERICK R. BAIRD, JOHN P. DOYLE, and G. R. HERR, all of Chicago, for plaintiff in error.

434

TEMPLE & WIMBISH, (GEORGE N. LEIGHTON, of counsel,) both of Chicago, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant in error, James H. Pleasant, filed application for adjustment under the Workmen's Compensation Act, alleging injuries received in the course of his employment with Armour & Company, the plaintiff in error, resulting in the loss of his right eye. On hearing, the arbitrator denied the application on the ground that the claimant did not sustain accidental injuries arising out of and in the course of his employment. On review, the Industrial Commission set aside the arbitrator's decision and entered an award, which the circuit court of Cook county confirmed. The cause is here on petition for review. It is agreed that the sole issue presented is whether or not Pleasant suffered an accidental injury which arose out of and in the course of his employment.

Pleasant was employed as a meat checker by plaintiff in error. As such, it was his duty to check the weights of meats shipped in or out of the plant. He worked in a scale shanty near the railroad tracks. The checker and the men who loaded and unloaded the cars worked under the same foreman, a man named Joseph Petullo.

On the morning of March 23, 1943, one of the men, working at loading the cars, took sick and went home. The foreman then sent for one Marcus Fykes, a carpenter's helper and handy-man, also employed by plaintiff in error, and told him to take the place of the car-loader who had gone home. Fykes did not want to help unload the car because he had a sore finger, but the foreman insisted that he do the job. During this conversation, Pleasant was standing in the doorway of the scale shanty ten or twelve feet away.

Claimant's version of what happened at this point is that he said to Fykes: "Why argue with the foreman about the job. If you don't want to do it, it is better to

go home than to stand a chance of losing your job arguing with the boss." Whereupon Fykes walked toward claimant asking him what he had to do with it, mumbling other incoherent words and at the same time drawing out a hatchet which he wore on his belt. Pleasant testified that Fykes stopped about a foot and a half from where he stood in the doorway, and then struck him in the eye with the hatchet. On cross-examination he admitted that as Fykes neared him, he pushed Fykes away with his foot and ran into the scale shanty and shut the door; that he then intended to make a "get away," opened the door of the shanty to leave, and then was struck by the hatchet.

Petullo, the foreman, testified that Pleasant said to Fykes, "If you don't want to work, go on home;" that he did not hear any other conversation, although there was an argument; that as Fykes neared the claimant, claimant kicked or pushed him with his foot, stepped in the shanty and closed the door. He testified that it was not until then that Fykes took out his hatchet, and that as claimant opened the door of the shanty, Fykes struck him. The hatchet Fykes carried in his belt was used by him in his work as handy-man, and was always carried by him.

William Johnson, another employee of plaintiff in error, testified that he was within eighteen feet of the scale shanty; that he saw Pleasant kick Fykes in the stomach and that Fykes fell back five or six feet against a truck, and Pleasant disappeared into the shanty and closed the door, and that when he opened the door again and started out, Fykes struck him. He testified that Fykes did not draw his hatchet until after he had been kicked. On rebuttal Pleasant testified that Fykes had the hatchet in his hand as he first approached the shanty and that he, Pleasant, pushed him off with his foot because he had the hatchet in his right hand in a swinging motion.

Thomas Stroud, another employee of plaintiff in error, and one of the loaders on the car being unloaded, testified before the commission on review that when Fykes com-

plained of his finger to the foreman claimant told Fykes if he could not work to punch his card and go home; that claimant was standing in the doorway of the shanty and suddenly kicked Fykes in the stomach; that Fykes fell back against some boxes, took his hatchet from his belt and struck claimant as the latter came out of the shanty. This was the evidence.

The rule is, as conceded, that for a claimant to recover under the Workmen's Compensation Act for an injury, it must appear that the injury received arose out of, and also was received in the course of, his employment. (*Riley* v. *Industrial Com.* 394 Ill. 126; *Scholl* v. *Industrial Com.* 366 Ill. 588; *Vincennes Bridge Co.* v. *Industrial Com.* 351 Ill. 444). Here the claimant, Pleasant, was employed as a meat checker and weigher. There is no showing that he had supervision over Fykes or of the car-loaders, nor does it appear that he had authority to assign men to work. There is evidence that both the claimant and Fykes were under the supervision of the foreman Petullo. When the claimant interposed in the dispute between Petullo and Fykes over the assignment of work, he was a mere volunteer acting outside the scope of his employment and authority.

Claimant contends that the injury arose out of his employment because the foreman ordered Fykes to work with him; because it was the subject of claimant's employment that caused Fykes to be angry; because claimant's employment was the subject of the chance remark he made to Fykes, and because it was his employment which caused him to come into contact with Fykes and required him to be at the spot where he was assaulted. Aside from the fact that most of this argument is unsupported by the evidence, it overlooks the fact that the employment and duties of the two men were different. Claimant was a meat checker and weigher, while Fykes was a handy-man. There was no quarrel over the proper manner of performing the

employer's work. The mere fact that association in the same work gives opportunity for an altercation is not sufficient to justify an award to the injured party. *City of Chicago* v. *Industrial Com.* 292 Ill. 406.

Pleasant's testimony as to the occurrence is wholly unsupported, while three witnesses testify to facts showing that Pleasant was not only the aggressor but stepped entirely out of the scope of his employment to engage in a controversy with Fykes.

The manifest weight of the evidence is that Pleasant's words to Fykes were antagonistic and bore no relation to the men's employment, and that they were not, as Pleasant contends, spoken only with the interest of the employer at heart. It is also evident that Pleasant followed his words with the first act of aggresion when he kicked Fykes. When an employee steps outside the scope of his employment, by reason of which he sustains injury, he cannot invoke the protection of the Workmen's Compensation Act. *Riley* v. *Industrial Com.* 394 Ill. 126; *Triangle Auto Painting and Trimming Co.* v. *Industrial Com.* 346 Ill. 609; *Franklin Coal and Coke Co.* v. *Industrial Com.* 322 Ill. 23.

Plaintiff in error also contends that the circuit court erred in admitting in evidence the record of criminal proceedings against Marcus Fykes, since plaintiff in error was not a party to that proceeding. Defendant in error confesses the error but contends it was not prejudicial because its admission was limited only to its value in determining who was the aggressor. In view of our finding that the evidence establishes the claimant as the aggressor, further discussion of this point is unnecessary.

The judgment of the circuit court confirming the award was contrary to the manifest weight of the evidence and it is reversed and the award is set aside.

*Judgment reversed; award set aside.*